**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tammy Michelle Rector,<br><br>    Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV 18-217-TUC-LAB<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 2)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 15)

The ALJ in this case failed to give specific and legitimate reasons for discounting the opinion of the treating physician. The case is remanded for payment of benefits.


PROCEDURAL HISTORY

On January 17, 2014, Rector filed an application for disability insurance benefits pursuant to Title II of the Social Security Act. (Tr. 21) She alleged disability beginning on March 22, 2013, due to fibromyalgia, pacemaker, chronic pain, restless body syndrome, diverticulitis, anxiety, panic attacks, cognitive problems, forgetfulness-poor memory, and fatigue. (Tr. 179, 180)

Her application was denied initially and upon reconsideration. (Tr. 106-113) Rector requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Yasmin Elias on September 19, 2016. (Tr. 36) In her decision, dated January 11, 2017, the ALJ found Rector was not disabled because, considering her age, education, work experience, and residual functional capacity, she could work as an accounts investigator or a store facility rental clerk. (Tr. 21-29)

Rector appealed, but on September 22, 2017, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4) Rector subsequently filed this action seeking review. (Doc. 1)

Claimant's Work History and Medical History

Rector was 44 years old at the hearing before the ALJ. (Tr. 42) She has an associates degree in nursing and worked as a certified nurse assistant, a registered nurse, and a nursing director. (Tr. 42) She stopped working on March 22, 2013 after an episode of pain, fatigue, lightheadedness, and dizziness. (Tr. 42-43) She also was having cognitive or memory problems. (Tr. 43)

Rector subsequently sought treatment from her primary care physician, Jeffery Bushman, D.O., for what she believed was trouble with her pacemaker. (Tr. 340, 341, 343) On May 14, 2013, rheumatologist Augusto Posadas, M.D., observed 16 of 18 trigger points and diagnosed arthralgia (joint pain), fibromyalgia, and fatigue. (Tr. 290)

On May 30, 2013, Bushman observed 16 of 18 trigger points and diagnosed cardiac dysrythmia, fibromyalgia, restless leg syndrome, and depression. (Tr. 338) The medical record contains additional treatment notes from May of 2013 through August of 2016. (Tr. 305-419, 458-487, 616-629) During this time, Bushman prescribed a series of medications in the hopes of ameliorating Rector's pain and other symptoms while minimizing adverse side-effects. *Id*. At various times, Rector was taking Cymbalta, Sinemet, Xanax, Norco, Butrans patches, Nortriptyline, Zoloft, hydrocodone, gabapentin, Fentanyl patches, Vicodin, Valium, Ambien,

lamotrigine, clonazepam, Oxycontin, alprazolam, Flexeril, and Lyrica. (Doc. 18, pp. 3-7); *see also* (Tr. 26); (Doc. 17-3, p. 27)

Rector was hospitalized from May 31 to June 3, 2014 for confusion resulting from a two-week incident of diarrhea. (Tr. 492-502) She presented to the emergency room on July 3, 2016 and again on July 9, 2016 for low back pain radiating to her legs. (Tr. 546, 540)

On July 29, 2016, Rector was evaluated by Mateja de Leonni Stanonik, M.D., Ph.D., for progressive memory loss for over three years. (Tr. 693) Leonni Stanonik diagnosed idiopathic epilepsy, amnesia, adjustment disorder with anxiety, and cervical and lumbar spondylosis. (Tr. 694)

In February of 2014, Bushman completed an assessment of Rector's physical abilities. (Tr. 296) He opined that she could lift and/or carry 20 pounds occasionally and less than 10 pounds frequently. (Tr. 296) She could stand and/or walk for less than 2 hours in an 8-hour day. (Tr. 296) She could sit for 4 hours in an 8-hour work day. (Tr. 296) She must alternate between sitting and standing every 30-60 minutes. (Tr. 296) She should never climb, balance, stoop, kneel, crouch, or crawl. (Tr. 297) She should only occasionally handle or reach with either hand. (Tr. 297)

In July of 2014, Richard M. Palmer, M.D., examined Rector for the state disability determination service. (Tr. 420) He diagnosed fibromyalgia, implanted pacemaker, tachycardia by history, chronic low back pain and left sciatica, chronic right and left knee pain, chronic fatigue, sleep dysfunction, and "overweight." (Tr. 424) He opined that she could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 424-425) She could stand and/or walk for 6-8 hours in an 8-hour day. (Tr. 425) She could sit for 6-8 hours in an 8-hour day. (Tr. 425) She should never climb ladders, rope, or scaffolds. (Tr. 426) She should only occasionally climb ramps or stairs, kneel, crouch, or crawl. (Tr. 426)

At the hearing before the ALJ, Rector testified that she has pain and fatigue. (Tr. 42) She has joint pain in her elbows, wrists, hips, knees, and ankles. (Tr. 44-45) This joint pain can flare up two or three times a month for typically two to three days at a time. (Tr. 45) Rector testified that she has good days as well as bad ones. (Tr. 46) But if she tries to work around the

house on one of her good days, she will be in bed for the next day or so recuperating. (Tr. 46) Even on an average day, she must lie down three to four times for 30 minutes to an hour each time. (Tr. 54)

Rector also has cognitive or memory problems. (Tr. 43) She could watch a movie with her husband and a week or two later forget that she saw it. (Tr. 36) She forgot to pick up her son at the bus stop a couple of times, thinking she already got him. (Tr. 47) She has insomnia, feels drained, and feels depressed. (Tr. 48-49)

At the end of the hearing before the ALJ, Stephen Davis testified as a vocational expert. (Tr. 59) He testified that a person with the same age, education, and work experience as the claimant, who could work at the light exertional level; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, kneel, crouch, and crawl; must avoid concentrated exposure to extremes and temperatures, humidity and fumes and/or work place hazards; must be able to alternate between sitting and standing every 30 minutes to an hour; was limited to simple routine and repetitive work due to an inability to concentrate or focus for long periods of time; could only occasionally handle and reach bilaterally, and could constantly manipulate and feel bilaterally, could work as an accounts investigator or a storage facility rental clerk. (Tr. 62, 63, 64, 66)

Davis conceded that a person with the functional limitations as described by Bushman who "could occasionally lift and/or carry 20 pounds, frequently, less than 10" and "could stand and/or walk with normal breaks for a total of less than two hours in an eight-hour day and sit with normal breaks for a total of less than six-hours in an eight-hour day, specifically four hours" could not work full-time. (Tr. 67)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

- 4 -

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id*. If the ALJ concludes that the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Rector "has not engaged in substantial gainful activity since March 22, 2013, the alleged onset date. . . ." (Tr. 23)

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 5 -

At step two, she found Rector "has the following severe impairments: fibromyalgia and/or chronic fatigue; obesity; anemia/low iron levels resulting from iron malabsorption following gastric stapling surgery (March 1999); tachycardia syndrome status post pacemaker (1997) . . . ." (Tr. 23)

At step three, the ALJ found Rector's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 25)

The ALJ then analyzed Rector's residual functional capacity (RFC). She found as follows:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: claimant can work at light exertional level in work that would never require climbing ladders, ropes or scaffolds; can occasionally climb ramps and stairs, balance, kneel, crouch, and crawl; in work that would only occasionally require overhead reaching bilaterally. The work should avoid concentrated exposure to extremes in temperatures, humidity, work place hazards and fumes; should allow her to alternate the sit/stand position briefly approx. every hour; also simple, routine repetitive tasks; only occasionally handling and feeling bilaterally, may constantly feel and fine manipulate.

(Tr. 25)

At step four, the ALJ found Rector is unable to perform any past relevant work. (Tr. 28) At step five, the ALJ found, based on the testimony of the vocational expert, that, considering her age, education, work experience, and residual functional capacity, Rector can work as an accounts investigator, DOT # 241.367-038, or store facility rental clerk, DOT #295.367-026. (Tr. 29)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her]

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her] or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A).

The findings of the ALJ are meant to be conclusive. The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn*, 495 F.3d at 635 (punctuation modified). "However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Id.* "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* If the ALJ does not find "affirmative evidence" of malingering, "those reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

Discussion

Rector first argues that the ALJ improperly discounted the opinion of her treating physician, Jeffery Bushman, D.O. "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are [ordinarily] given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the treating physician's opinion is uncontradicted, the ALJ may disregard it only after giving clear and convincing reasons for doing so. *Id.* The ALJ may

- 7 -

reject the treating physician's contradicted opinion only if she sets forth "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified). In this case, Bushman's opinion is contradicted by the medical opinion of the examining state agency physician, Richard M. Palmer, M.D. Accordingly, the ALJ's decision to discount Bushman's opinion must be supported by "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified). The court finds that the ALJ failed to do so, and Bushman's opinion was discounted erroneously.

The ALJ's critique of Bushman's opinion reads as follows:

> The claimant's treating physician, Dr. Bushman, assigned very restrictive limitations at Exhibit 3F and 16F, which are not supported by the medical evidence. Dr. Bushman opined that the claimant could only stand or walk less than 2 hours of an 8-hour day, yet physical examination from visits to his office were grossly normal (Exhibit 4F at 19). Dr. Bushman stated that the claimant suffers from pain and fatigue that seriously affects the claimant's ability to function, but as described in detail above, the treatment notes show that the claimant's pain medications were effective and generally reported doing well.

(Tr. 27); (Doc. 17-3, p. 28) The ALJ faulted Bushman's opinion primarily because it was "not supported by the medical evidence." *Id*. She does not elaborate on what sort of "support" Bushman should have provided, but it appears that she expected the medical record to contain "objective" evidence supporting Rector's alleged functional limitations. Earlier in her decision, the ALJ stated generally that

> While the claimant has complained of many different symptoms and seen many physicians, the record does not contain the types of *objective evidence* of symptoms related to a particular identifiable condition that would reasonably produce those symptoms.

(Tr. 26) (emphasis added) And in her critique of Bushman's opinion, she specifically notes that Rector's physical examinations were "grossly normal." (TR. 27) It seems apparent that the ALJ's primary reason for discounting Bushman's opinion of Rector's functional limitations was a perceived lack of supporting objective evidence in the medical record. The ALJ's rationale, however, fails to account for the idiosyncratic nature of Rector's diagnosis.

- 8 -

Rector suffers from fibromyalgia, "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissues." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.* at 590. "[T]o date there are no laboratory tests to confirm the diagnosis." *Id.*

Bushman's failure to provide objective support for his medical opinions and his reliance on the Rector's subjective reporting of pain is understandable given the nature of her disease. Fibromyalgia does not result in objective medical signs. The ALJ unreasonably discounted Bushman's opinion based on his failure to supply something that does not exist. The ALJ, therefore, did not supply "specific and legitimate" reasons for discounting his opinion of Rector's functional limitations. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("The ALJ erred by effectively requiring 'objective' evidence for a disease that eludes such measurement.") (punctuation modified); *see also Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017).

The ALJ further noted that "the treatment notes show that the claimant's pain medications were effective and generally reported doing well." (Tr. 27); (Doc. 17-3, p. 28) She advances this statement as an additional reason for discounting Bushman's opinion.

The ALJ is partially correct. The medical record does contain reports that Rector's medications were helping to control her pain. For example, "[i]n July 2014, [Rector] reported that her medications helped control her pain and allowed her to do her activities of daily living." (Tr. 26) (citing Exhibit 8F at 16) "In August 2014, [Rector] reported having had one of her best months in a long time." (Tr. 26) (citing Exhibit 8F at 16) And "[o]n March 31, 2015, [Rector] reported that her pain was well controlled on her medications." (Tr. 26) (citing Exhibit 18F at 21) But the fact that Rector experiences periods of reduced pain does not mean that she has the ability to work in a sustained fashion.

At the hearing, Rector testified that she has good days and bad days. (Tr. 46) And on good days, she often tries to accomplish things around the house "that have piled up." (Tr. 46) Unfortunately, when she does so, "[f]or the next day or so, I'll be in bed, just trying to

reciprocate [sic] from the previous day, usually." (Tr. 46) "I'm not able to function like I should be able to function." (Tr. 46) She explained that in exchange for an active day, she must "pay for it essentially." (Tr. 46)

The ALJ correctly states that the medical record contains reports that Rector's medications are controlling her pain, at least from time to time. This fact, however, is not a legitimate reason for discounting Bushman's opinion of her functional limitations. Bushman's evaluation of Rector's ability to perform work-related activities takes into account the fact that these activities must be performed throughout an 8-hour work day and a 5-day work week. (Tr. 296-297) Rector might be able to sustain a full 8-hour day of working from time to time, but there is no evidence that she could sustain this level of activity the following day and for the remainder of the work week. *See also Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017) ("SSR 12-2P recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'").

The ALJ improperly discounted the treating physician's opinion of the claimant's functional limitations. The final decision of the Commissioner must be reversed. The court does not reach Rector's alternate arguments.

Ordinarily, if the Commissioner is reversed, the court should remand for further administrative proceedings. The court may, however, remand for payment of benefits if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, all three requirements are fulfilled. First, "[t]he record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. As the Ninth Circuit observed in *Garrison*, "our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to

have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis." *Garrison v. Colvin*, 759 F.3d 995, 1021 -1022 (9th Cir. 2014)

Second, the ALJ failed to provide specific and legitimate reasons for discounting the treating physician's opinion. *See above*. Third, if Bushman's opinion were credited as true, Rector necessarily would be found disabled. The vocational expert testified that if Rector had the functional limitations described by Bushman, then she would be disabled. (Tr. 67, 296-297)

All three parts of the *Garrison* test are fulfilled. Furthermore, the court has examined the entire record and finds no reason to seriously doubt that Rector is disabled. *See Garrison*, 759 F.3d at 1022-23. Accordingly, this case will be remanded for payment of benefits. *See also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for payment of benefits.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 2nd day of January, 2019.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge